UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NIKOLAY LEVINSON,

            *Plaintiff*,

– against –

UNITED STATES OF AMERICA,

            *Defendant.*

**MEMORANDUM & ORDER**
23-cv-05598 (NCM) (LB)

---

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendant's Motion to Dismiss, ECF No. 26,[1] plaintiff Nikolay Levinson's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff brings this action against defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80, alleging negligence and medical malpractice. For the reasons stated below, defendant's motion is **GRANTED**.

## BACKGROUND

*A. Plaintiff's Infection and Treatment*

Plaintiff alleges that, on November 22, 2021, he took a shower in Unit 83 of the Brooklyn Metropolitan Detention Center ("MDC") and noticed "that they had mold on the

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss, ECF No. 26-1, as the "Motion"; plaintiff's Affidavit in Opposition to Defendant's Motion to Dismiss, ECF No. 28, as the "Opposition"; and the Reply Memorandum of Law in Support of Defendant's Motion to Dismiss, ECF No. 30, as the "Reply."

1

walls and that the showers were very dirty." Compl. 3–4, ECF No. 1.[2] Once plaintiff emerged from the shower, he noticed red dots on his "inner right thigh"[3] that were "very painful and itchy." Compl. 4. The next day, plaintiff sent a message to Federal Bureau of Prisons ("BOP") medical staff complaining of "red dots" around his "inner thighs," and requesting "some kind of an ointment." Ex. A 2, ECF No. 26-3.[4] Two hours later, BOP medical staff responded to plaintiff, confirming that he was scheduled for sick call. Ex. B 2, ECF No. 26-4.

On December 14, plaintiff was seen at sick call, where the rash was diagnosed as a "[t]inea infection," for which plaintiff received clotrimazole cream. Compl. 4; Ex. C 3, ECF No. 26-5. A week later, the infection "healed," but left the "permanent mark" that constitutes plaintiff's injury in this case. Compl. 4.

On March 4, 2022, plaintiff was transferred to FCI Danbury, where his medical intake screening resulted in a report that his rash was "resolved." *See, e.g.*, Ex. C 32, 41.

---

[2]   Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[3]   Plaintiff's administrative tort claim asserted that the "red dots" eventually causing his complained-of "permanent scarring" were on his "*left* thigh." *See* Ex. D 2, ECF No. 26-6 (emphasis added).

[4]   In weighing the sufficiency of plaintiff's claims, the Court may consider "documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." *Faconti v. Potter*, 242 F. App'x 775, 777 (2d Cir. 2007) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993)). And in suits requiring administrative exhaustion, "a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein." *Moreau v. Peterson*, No. 14-cv-00201, 2015 WL 4272024, at *3 (S.D.N.Y. July 13, 2015), *aff'd*, 672 F. App'x 119 (2d Cir. 2017). As each exhibit attached to the Opposition was either known to plaintiff or a BOP administrative report or record, the Court takes notice of these exhibits. *See generally* Beddoe Decl., ECF No. 26-2.

The doctor administering that screening explained that plaintiff denied having "any concerns today." Ex. C. 20.

### B. *Plaintiff's FTCA Claim*

On March 9, 2022, plaintiff mailed the BOP a one-page letter titled "FTCA – Tort Claim," describing his injuries, summarizing the facts above (but alleging the rash occurred on his inner *left* thigh), and demanding $50,000 in damages. *See* Ex. D 2. On June 12, 2023, the BOP sent plaintiff a letter denying his FTCA claim on the basis that there was "no evidence that [plaintiff] experienced a compensable loss as the result of negligence on the part of any Bureau of Prisons employee." Ex. E 2, ECF No. 26-7.

On July 24, 2023, plaintiff filed this action alleging negligence and medical malpractice under the FTCA. Plaintiff's primary assertion is that BOP medical officials committed medical malpractice when they allowed a "delay in treatment" of "over twenty days" to treat his tinea infection, causing it to "[get] worse," "penetrate[] through [his] skin," and leave a "permanent mark." Compl. 4–5. Plaintiff's complaint also suggests that BOP was negligent because "no action was taken to clean" the "dirty" shower conditions that gave rise to his infection. Compl. 4.

## LEGAL STANDARD

When deciding a motion to dismiss, a court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[5] Factual disputes are typically not the subject of the Court's analysis at this stage, as Rule 12 motions "probe

---

[5] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). Thus, "[t]he issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail," but instead whether a plaintiff is "entitled to offer evidence to support the[ir] claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, "[d]ismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Panse v. Eastwood*, 303 F. App'x 933, 934 (2d Cir. 2008) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). At the same time, plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366 (E.D.N.Y. 2005).

      The Court holds a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally." *Harris*, 572 F.3d at 72. However, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and the Court may not "invent factual allegations that [a plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

**DISCUSSION**

Defendant moves to dismiss plaintiff's claims on the basis that plaintiff has "not identified any deviation or departure from accepted medical practice," or that "any such deviation or departure was a proximate cause of any injury." Mot. 2. In response, plaintiff argues that he has adequately alleged MDC's dirty showers caused his infection, that he gave prison staff notice of the unsanitary shower conditions, and that BOP's delay in treating his infection was the proximate cause of his permanent injury. Opp'n at 1.

Medical malpractice and negligence are common law torts actionable under Section 2674 of the FTCA. Liability for an FTCA claim is determined by state law. 28 U.S.C. § 2674; *see Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021). Because plaintiff's theories regarding delayed treatment and unsanitary shower conditions stem from conduct occurring at MDC, which is located in New York State, New York law governs both of his claims. For the reasons stated below, plaintiff has failed to state a claim for relief under either theory and therefore the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

I. *Medical Malpractice*

To state a claim for medical malpractice under New York law, a plaintiff must allege "(1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury." *Ongley v. St. Luke's Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018).

Plaintiff has failed to state a claim for medical malpractice because his complaint fails to establish the first prong, specifically that the time it took for him to receive treatment was a "deviation or departure from accepted practice." *Id.* Plaintiff claims

5

medical malpractice on the basis that "[i]t took over twenty days" to treat his thigh condition. Compl. 4. However, plaintiff does not explain how the approximate three weeks he waited for a sick call appointment was out of line with any "community standard of care." *Valentine v. Lindsay*, No. 10-cv-00868, 2011 WL 3648261, at \*9 (E.D.N.Y. Aug. 17, 2011). *See also Rivera v. Fed'l Bureau of Prisons*, No. 17-cv-05103, 2018 WL 11312146, at \*11 (S.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 368 F. Supp. 3d 741 (S.D.N.Y. 2019) (clarifying that the "acceptable medical practice" standard is not BOP-specific, but relative to medical care administered by plaintiff's non-BOP providers prior to incarceration). Because this "21-day delay" is the crux of plaintiff's malpractice claim, his failure to allege an unfollowed "acceptable practice" is fatal to it. Opp'n at 1; *see Carter v. United States*, No. 22-cv-06715, 2024 WL 1345313, at \*9 (E.D.N.Y. Mar. 29, 2024) (finding that plaintiff insufficiently alleged medical malpractice where he did "not allege how the failure to receive medical care . . . constitute[d] deviation from accepted medical care").

Other courts have dismissed FTCA medical malpractice claims based on similarly deficient allegations. In *Skyers*, for example, the Court dismissed medical malpractice claims against a BOP doctor in part because plaintiff failed to allege that she "departed from any accepted medical practice." *Skyers v. United States*, No. 12-cv-03432, 2013 WL 3340292, at \*14 (S.D.N.Y. July 2, 2013). There, plaintiff developed a wound that he alleged was untreated for 13 days and consequently led to "nerve damage and limited use of his hand." *Id*. at \*1; Compl. 3–4, *Skyers v. United States*, No. 12-cv-03432 (S.D.N.Y. Apr. 30, 2012), ECF No. 2. The Court dismissed plaintiff's claim in part because plaintiff claimed no facts that his doctor "departed from any accepted medical practice," asserting instead that his doctor's "deferral of his treatment . . . was the cause of the damage to his

6

hand" and "other medical staff were unqualified to diagnose him." *Skyers*, 2013 WL 3340292, at *14. Here, plaintiff also requested medical attention, presented his symptoms to BOP personnel, and received medical care to address his issue. Without further allegations as to what sort of care would have been more appropriate and on what timeline, plaintiff's FTCA claim is deficient.

Plaintiff also fails to state a claim for medical malpractice because he does not allege more than "legal conclusions masquerading as factual conclusions" that the delay in medical treatment was the proximate cause of his injury. *Nwaokocha*, 369 F. Supp. 2d at 366. A defendant's conduct "qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Dooley v. United States*, 83 F.4th 156, 162 (2d Cir. 2023); *Mazella v. Beals*, 27 N.Y.3d 694, 706 (2016) (medical malpractice claim). "By contrast, proximate cause will be found lacking where the act merely furnished the occasion for but did not cause the injury." *Dooley*, 83 F.4th at 164.

Throughout his pleadings, plaintiff only connects the "permanent mark on [his] thigh" to the "21-day delay" in treatment by stating that the "delay made the infection much worse." Opp'n at 1. But this is a legal conclusion without factual support and therefore cannot "nudge [plaintiff's] claim of medical malpractice over the line from possible to plausible." *Jiminez v. United States*, No. 11-cv-04593, 2013 WL 1455267, at *6 (S.D.N.Y. Mar. 25, 2013). *See also Isaac v. City of N.Y.*, No. 17-cv-01021, 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018) (dismissing medical malpractice claim for failure to state a claim in part because "boilerplate statements" regarding causation were

7

insufficient to state a claim).[6] Because plaintiff cannot demonstrate a deviation from the standard of care or that such a deviation caused him injury, he has failed to state a medical malpractice claim.

## II.   *Negligence*

The court construes plaintiff's complaint to also bring a negligence claim based on his allegations that the failure of BOP officials to address "very dirty," mold-infested showers led to his tinea infection. *See, e.g.*, Compl. 4. To state a claim for negligence under New York law, a plaintiff must allege "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*, 721 F. Supp. 2d 293, 299 (S.D.N.Y. 2010).

Plaintiff seemingly attempts to argue that defendant was negligent because he "notified" or "told the officer on duty a few hours before" his shower that it was "dirty," then "noticed" red dots on his thigh after his shower. Opp'n at 1; Compl. 4. However, these facts do not adequately plead causation. To make out a claim that defendant's conduct was negligent, plaintiff must allege that the deviation or departure from accepted practice, or other breach of duty, was the proximate cause of his injury or damage. *See Rivera*, 2018 WL 11312146, at *10 (quoting *Torres v. City of N.Y.*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001)). As in plaintiff's medical malpractice claim, legal conclusions that the

---

[6]   Furthermore, plaintiff's claim that it is "self-explanatory that the Bureau of Prisons medical staff is responsible for the delay in treatment" does not redeem his medical malpractice claim. Opp'n at 1. Beyond being conclusory, this assertion fails to address *how* the conduct of BOP officials caused his complained-of injury.

8

conditions of the shower led to plaintiff's rash are inadequate to plead proximate causation.

Plaintiff makes three assertions related to his negligence theory: (1) that he noticed the showers were dirty, (2) that he told the officer on duty that the showers were dirty, and (3) he noticed red dots on his inner right thigh after his shower. Based on these observations, it is conceivable that the state of the MDC showers led to plaintiff's infection. But the scarce detail in plaintiff's complaint does not "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. For example, plaintiff alleges no facts suggesting why the "mold on the walls" or showers might have infected his upper thigh. Opp'n at 1. Without more specific allegations, plaintiff's causation claims remain too conclusory to plausibly allege that the mold on the showers at MDC was the proximate cause of his rash. Plaintiff may conclude that his rash resulted from MDC shower conditions, but he must allege sufficient facts to allow the Court to find his conclusion plausible.

9

## CONCLUSION

For the reasons stated above, the Court **GRANTS** defendant's Motion and dismisses plaintiff's complaint in its entirety without prejudice. The Court grants plaintiff leave to amend his complaint within thirty (30) days of the date of this Order. Any new complaint must be captioned "Amended Complaint" and shall bear the same docket number as this order. If plaintiff does not file an amended complaint within thirty (30) days, this case will be dismissed.

**SO ORDERED.**

                                                  ___/s/ *Natasha C. Merle*___
                                                  NATASHA C. MERLE
                                                  United States District Judge

Dated:        August 21, 2024
               Brooklyn, New York