UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NIKOLAY LEVINSON,

                *Plaintiff,*

– against –

UNITED STATES OF AMERICA,

                *Defendant.*

**MEMORANDUM & ORDER**
23-cv-05598 (NCM) (LKE)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendant's motion to dismiss, ECF No. 45, plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff brings this action against defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80, alleging negligence and medical malpractice.[2] For the reasons stated below, defendant's motion is **GRANTED in part, DENIED in part.**

## BACKGROUND

Plaintiff Nikolay Levinson was formerly incarcerated at the Metropolitan Detention Center ("MDC"), in Brooklyn, New York. *See* Am. Compl. ("AC") 5,[3] ECF No.

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint, ECF No. 45-1, as the "Motion"; Plaintiff's January 31, 2025 Letter, ECF No. 47, as the "Opposition"; and the Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Amended Complaint, ECF No. 48, as the "Reply."

[2] Plaintiff has a separate FTCA case before this Court, *Levinson v. United States*, No. 23-cv-04853 (E.D.N.Y. filed June 26, 2023) ("*Levinson I*"). The Court hereinafter refers to the instant action as "*Levinson II*."

[3] Throughout this opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

1

38. While incarcerated at the MDC, plaintiff was housed in Unit 83. AC 5. On November 21, 2021, plaintiff noticed that "all of the showers in the unit were very dirty with mold and bacteria infection on the walls." AC 5. Plaintiff informed the officer on duty "that the showers were dirty." AC 5. A few hours after informing the officer, plaintiff went to take a shower but observed that "nothing was done to clean" the showers. AC 5. Plaintiff showered in the shower nearest to the exit door, and, while taking a shower, "the cells from the mold and bacteria infection leaked" onto the skin of plaintiff's left inner thigh. AC 5. This exposure "caus[ed] a large[,] circular[,] [and] red dot/rash" that was painful and itchy. AC 5.

Plaintiff filled out a medical request form shortly thereafter. *See* AC 5. A few weeks later, on December 14, 2021, plaintiff was seen by a member of the MDC's medical staff, Dr. Joaquin. AC 5. Dr. Joaquin examined plaintiff and diagnosed his rash as a "tinea infection." AC 5. Plaintiff was provided clotrimazole cream which treated the rash, however, the infection "left a permanent discoloration" on plaintiff's thigh. AC 5.

A few years later, after he was released from the MDC, plaintiff saw a dermatologist concerning the discoloration on his thigh. *See* AC 5–6. Plainitff's dermatologist made a report confirming that plaintiff had previously had a tinea infection and noting that the "permanent discoloration" on plaintiff's left thigh was "because of the delay in treatment." AC 6. According to plaintiff, defendant was "suppose[d]" to treat the infection "within seven days" after receiving plaintiff's original medical request. *See* AC 6.

On July 24, 2023, plaintiff proceeding *pro se* filed the instant action, asserting claims against defendant for alleged negligence and medical malpractice pursuant to the FTCA. *See generally* Compl., ECF No. 1. Defendant moved to dismiss plaintiff's complaint for failure to state a claim, arguing that, among other things, plaintiff "fail[ed] to allege

2

what standard of care was violated at the MDC, how it was violated, who violated it, or how that purported violation proximately caused him any injury." Mem. of Law in Supp. of Def.'s Mot. to Dismiss 2, ECF No. 26-1.

On August 21, 2024, the Court granted defendant's motion and dismissed plaintiff's complaint without prejudice. *See generally* Memorandum & Order ("M&O"), ECF No. 32. The Court dismissed plaintiff's medical malpractice claim because plaintiff failed to establish "that the time it took for him to receive treatment was a deviation or departure from accepted [medical] practice." M&O 5 (quoting *Ongley v. St. Luke's Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018) (summary order)). The Court also explained that plaintiff failed to allege sufficient facts supporting an inference "that the delay in [plaintiff's] medical treament was the proximate cause of his injury." M&O 7. As to plaintiff's negligence claim, the Court construed that claim to be based on plaintiff's allegation "that the failure of [Federal Bureau of Prisons ("BOP")] officials to address very dirty, mold-infested showers led to his tinea infection." M&O 8. The Court observed that "it [wa]s conceivable that the state of the MDC showers led to plaintiff's infection." M&O 9. However, in the absence of "more specific allegations," the Court was unable to conclude that plaintiff's allegation "that the mold on the showers at MDC was the proximate cause of his rash," was plausible. M&O 9.

Plaintiff filed an amended complaint two months later. *See generally* AC. In his amended complaint, plaintiff again brings claims for negligence and medical malpractice pursuant to the FTCA. *See* AC 4. Defendant again moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. 2.

3

**LEGAL STANDARD**

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[4] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

The Court "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v.*

---

[4]   Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

*Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir. 2007)).

## DISCUSSION

The FTCA "is the exclusive means for recovering damages against a federal agency for common law tort claims." *Murdock v. Microsoft Corp.*, No. 15-cv-03583, 2015 WL 5460190, at *4 n.6 (S.D.N.Y. Aug. 19, 2015) (quoting *Cziko v. U.S. Postal Serv.*, 79 F. App'x 468, 468 (2d Cir. 2003)); *see also U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 807 (1984) ("The Federal Tort Claims Act, 28 U.S.C. § 1346(b), authorizes suits against the United States for damages[.]"). "State law is the source of substantive liability under the FTCA." *Gonzalez v. United States*, 80 F.4th 183, 193 (2d Cir. 2023) (quoting *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021)). That is, in an FTCA action, "courts are bound to apply the law of the state where the tort occurred." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). Accordingly, because plaintiff's theories of negligence and medical malpractice arise from conduct occurring at the MDC, located in New York State, New York law governs his claims. *See* M&O 5.

Plaintiff brings claims for negligence and medical malpractice in connection with the tinea infection he allegedly contracted because of the "very dirty" conditions of the MDC's showers. *See* AC 5. Plaintiff's negligence claim is premised on defendant's failure to remedy the conditions of its showers, even though plaintiff "told the officer on duty that the showers were dirty." Opp'n 1. Plaintiff's medical malpractice claim is based on plaintiff's argument that his infection "was supposed to be treated within seven days," but defendant "took 21 days to treat it." Opp'n 1. The Court addresses each claim in turn.

5

## I. Negligence

To state a claim for negligence under New York law, plaintiff must plausibly allege "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*, 721 F. Supp. 2d 293, 299 (S.D.N.Y. 2010) (quoting *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)). To sufficiently plead breach, plaintiff must plausibly allege that defendant "had actual or constructive notice of [a] [dangerous] condition and failed to repair or take necessary precautions regarding the condition." *Ducrepin v. United States*, 964 F. Supp. 659, 663 (E.D.N.Y. 1997) (collecting cases). As to the causation element, plaintiff must plausibly allege "that the defendant's conduct was the proximate cause of his . . . injury." *Segarra v. Delta Airlines, Inc.*, No. 18-cv-08135, 2020 WL 3127879, at *6 (S.D.N.Y. June 12, 2020).

Plaintiff plausibly alleges each element of negligence. First, it is well-settled "that prison officials ha[ve] a duty to provide reasonably safe prison conditions." *Garcia v. Fisher*, No. 13-cv-08196, 2016 WL 297729, at *10 (S.D.N.Y. Jan. 22, 2016). Specifically, the BOP has a statutory duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence" of all inmates in its custody. *Smith v. United States*, 207 F. Supp. 2d 209, 214 (S.D.N.Y. 2002) (citing 18 U.S.C. § 4042(a)(2)); *see also Carter v. United States*, No. 22-cv-06715, 2024 WL 1345313, at *5 (E.D.N.Y. Mar. 29, 2024) (explaining that "18 U.S.C. § 4042 provides for a standard duty of care owed by BOP to prisoners in federal custody"). "This statutory duty means that the BOP must exercise ordinary diligence or reasonable care to keep prisoners safe and free from harm." *Young v. United States*, No. 12-cv-02342, 2014 WL 1153911, at *13 (E.D.N.Y. Mar. 30, 2014) (quoting *Smith*, 207 F. Supp. 2d at 214). And this duty extends to the provision of

reasonably safe and sanitary living conditions. *See Lee v. Cook*, No. 21-cv-00399, 2021 WL 3055403, at *5 (D. Conn. July 20, 2021) (citing *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013)) ("Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene."); *see also Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) ("[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease.").

Next, plaintiff plausibly alleges that defendant breached its duty of care. Plaintiff alleges that he observed "all of the showers in [his] unit were very dirty with mold and bacteria infection on the walls." AC 5. Plaintiff further alleges that he "told the officer on duty that the showers were dirty," and yet, after a few hours, "nothing was done to clean them." AC 5. These allegations support an inference that defendant "had actual notice" of an unreasonably unsanitary or dangerous condition and "failed to repair or take necessary precautions regarding the condition," thus constituting breach. *Ducrepin*, 964 F. Supp. at 663. *See Aldrich v. United States*, No. 22-cv-05297, 2024 WL 4301939, at *8 (S.D.N.Y. Sept. 26, 2024) ("To show a breach of duty, a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness."); *see also Abrams v. Erfe*, No. 17-cv-01570, 2018 WL 691714, at *14 (D. Conn. Feb. 2, 2018) ("In general, mold has been recognized as a factor which may pose an unreasonable risk of damage to a prisoner's health.").

Finally, plaintiff plausibly alleges that defendant's breach caused him injury, namely, a "painful and itchy" rash and infection. AC 5. To establish the causation element of his negligence claim, plaintiff must demonstrate that "defendant's breach was the proximate cause of [his] injury." *Yakubzon v. Dupont Corp.*, No. 00-cv-06765, 2002 WL 31410300, at *2 (E.D.N.Y. Oct. 16, 2002). A plaintiff meets this burden on a

motion to dismiss by alleging facts from which the Court can infer that the defendant's conduct was "a substantial cause of the events which produced the injury." *Dooley v. United States*, 83 F.4th 156, 162 (2d Cir. 2023). Plaintiff's allegations meet this burden here. Specifically, plaintiff alleges that "while [he] was taking a shower," the mold and bacteria on the shower walls "leaked onto the skin of [his] left inner thigh causing a large[,] circular[,] [and] red dot/rash." AC 5. These allegations are sufficient at the pleading stage to support an inference of causation. *See e.g.*, *Carter*, 2024 WL 1345313, at *10 (concluding the plaintiff's allegations that "as a direct and proximate result of the combined negligence of staff and medical personnel at MDC, [the] plaintiff ha[d] suffered second degree burns to the right foot . . . w[as] sufficient to allege causation at the pleading stage"); *Guggino v. Med. Dep't – Yaphank Corr. Facility*, No. 25-cv-00597, 2025 WL 1207665, at *4 (E.D.N.Y. Apr. 25, 2025) (noting at motion to dismiss stage that "the Court takes as true the [c]omplaint's allegation that a fungus or bacteria in the [j]ail's showers caused [the plaintiff] to contract an infection").

To the extent defendant contends that plaintiff's negligence claim should "be dismissed based on the law of the case doctrine," this argument is unavailing. *See* Mot. 12. As the Court previously observed: "it is conceivable that the state of the MDC showers led to plaintiff's infection." M&O 9. Given "the scarce detail" in plaintiff's first complaint, the Court was previously unable to find plaintiff's "conclu[sion] that his rash resulted from MDC shower conditions . . . plausible." M&O 9. However, plaintiff's amended complaint supplies the necessary detail to "nudge his claim[] across the line from conceivable to plausible." M&O 9 (quoting *Twombly*, 550 U.S. at 570). Namely, plaintiff now alleges precisely where, when, and how he was exposed to the mold and bacteria. *See* AC 5 (detailing that plaintiff took a shower "at the last shower to the right of the unit,"

8

and that "while [he] was taking a shower . . . cells from the mold and bacteria infection leaked" onto plaintiff's skin). Thus, contrary to defendant's suggestion, plaintiff does not "present[] the same allegations or factual record previously deemed deficient by [the] [C]ourt," and the law of the case doctrine does not foreclose plaintiff's claim. Mot. 12.

In sum, plaintiff plausibly alleges that defendant owed him a duty, that defendant breached that duty, and that plaintiff suffered injuries from defendant's breach. Accordingly, defendant's motion to dismiss plaintiff's negligence claim premised on the shower conditions at the MDC must be denied.

## II.  Medical Malpractice

Plaintiff also brings a medical malpractice claim in connection with his tinea infection. Specifically, plaintiff alleges that Dr. Joaquin, plaintiff's treating BOP doctor, "was suppose[d] to treat [plaintiff's] infection within seven days," after receiving plaintiff's complaint of the infection, and, in failing to do so, "deviated from an acceptable medical standard." AC 6. Plaintiff asserts that this "deviat[ion] from an acceptable medical standard," caused "permanent discoloration on [his] inner left thigh." AC 6. Defendant argues that plaintiff "does not take issue with the *competence* of the medical care that he received at the MDC at all but rather, purportedly the *speed* with which he received it[.]" Mot. 9. And in defendant's view, plaintiff fails to explain "how any purported delay was a deviation from accepted medical practice," or how such purported delay contributed to plaintiff's alleged injury. Mot. 9. The Court agrees.

To state a claim for medical malpractice under New York law, a plaintiff must allege "a deviation from the community standards of practice that proximately caused [the plaintiff's] injuries." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 61 (2d Cir. 2023); *see also Ongley*, 725 F. App'x at 46 ("Under New York law, the essential elements of medical

9

malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury."). It's well-established that the general standard of practice for physicians in New York requires that the medical provider "exercise that reasonable degree of learning and skill that is ordinarily possessed by practitioners in the locality where he practices." *Butler v. United States*, No. 20-cv-10044, 2023 WL 5664216, at *16 (S.D.N.Y. Sept. 1, 2023). Moreover, "boilerplate statements that . . . defendant[] deviated from the acceptable standards of medical care[,]" and that those "acts were the direct and proximate cause of plaintiff's injury, are not sufficient to state a claim." *Isaac v. City of New York*, No. 17-cv-01021, 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018).

Plaintiff once again fails to establish the first prong of his malpractice claim—"that the time it took for him to receive treatment was a deviation or departure from accepted practice." M&O 5 (quoting *Ongley*, 725 F. App'x at 46). As the Court previously explained, plaintiff's malpractice claim is deficient absent "further allegations as to what sort of care would have been more appropriate and on what timeline." M&O 7. Plaintiff does not allege that the clotrimazole cream he was provided as treatment deviated from accepted medical practice. Further, plaintiff's conclusory assertion that defendant "was suppose[d] to treat [the] infection within seven days[,]" AC 6, is unsupported by any facts which could make that conclusion plausible. For instance, plaintiff does not allege that he previously suffered from and was treated for a tinea infection such that he would know the timeline on which such an infection is typically treated. *Cf. Jones v. Beth Israel Hosp.*, No. 17-cv-03445, 2018 WL 1779344, at *10 (S.D.N.Y. Apr. 12, 2018) (concluding that the plaintiff plausibly alleged the applicable standard of care for psychological observation and medication where the plaintiff "had been in and out of the psych wards at various other

10

hospitals" and "had been on psychiatric drugs for twelve years"). And in any event, when plaintiff asserts that he was "supposed" to be treated does not, on its own, establish the "standard of care in the locality where the treatment occurred," nor does it "allow a reasonable inference that the care [plaintiff] received for his . . . injury fell below the standard of care in the locality where he received treatment." *Rivera v. Fed. Bureau of Prisons*, No. 17-cv-05103, 2018 WL 11312146, at *14 (S.D.N.Y. Dec. 14, 2018), *report and recommendation adopted in part*, 368 F. Supp. 3d 741 (Mar. 15, 2019).

The report from plaintiff's dermatologist—three years after he received treatment—allegedly opining that the discoloration in plaintiff's thigh was caused "because of the delay in treatment," does not compel a different conclusion. *See* AC 5–6. Even if the report contained such findings, plaintiff still fails to connect "*how* the conduct of BOP officials caused his complained of-injury," or departed from accepted medical practice. *See* M&O 8 n.6. That is, plaintiff "does not explain how the delay in providing him with . . . medication deviated from accepted medical practice." *Isaac*, 2018 WL 1322196, at *8. *See also Carter*, 2024 WL 1345313, at *9 ("Plaintiff fails to allege sufficient facts to establish a prima facie case of medical malpractice because [p]laintiff does not explain how the delay in providing him with treatment or the treatment itself deviated from accepted medical practice."). Indeed, when plaintiff first reported his infection, he received an immediate response to his sick call message and was placed on the schedule "in line with standard BOP Health Services Unit procedures." Mot. 9.

Therefore, plaintiff fails to plausibly allege that defendant's treatment of his condition deviated from an acceptable medical standard of care. Accordingly, defendant's motion to dismiss plaintiff's medical malpractice claim is granted.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is **GRANTED in part, DENIED in part**. Defendant shall file and serve an answer to the amended complaint on or before June 30, 2025. This case is referred to Magistrate Judge Lara K. Eshkenazi for pretrial supervision.

**SO ORDERED.**

  /s/ Natasha C. Merle  
NATASHA C. MERLE  
United States District Judge

Dated:  May 30, 2025  
  Brooklyn, New York